UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DANIEL STOLZ, | : | Case No. 1:14-cv-44 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| J & B STEEL ERECTORS, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER GRANTING DEFENDANT MESSER CONSTRUCTION CO.'S
MOTION FOR SUMMARY JUDGMENT (Doc. 14) AND
DENYING THE MOTIONS FOR SUMMARY JUDGMENT OF DEFENDANTS
D.A.G. CONSTRUCTION CO., INC., TRIVERSITY CONSTRUCTION CO., LLC,
AND J & B STEEL ERECTORS, INC. (Docs. 37 and 40)**

This civil action is before the Court on Defendant Messer Construction Co.'s

motion for summary judgment (Doc. 14), Defendants D.A.G. Construction Co., Inc.'s

and Triversity Construction Co., LLC's motion for summary judgment (Doc. 37),

Defendant J & B Steel Erectors, Inc.'s motion for summary judgment (Doc. 40), and the

parties' responsive memoranda (Docs. 56, 61, 63, 65, and 66).[1]

_____

[1] Plaintiff seeks oral argument on these motions.  (*See* Doc. 56 at 1; Doc. 63 at 1).  S.D. Ohio Civ. R. 7.1(b)(2) provides for oral argument where it "is deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented[.]"  Here, the Court finds that the factual and legal issues are clear on their face, so oral argument is not necessary.  *See Whitescarver v. Sabin Robbins Paper Co.,* Case No. C–1–03–911, 2006 WL 2128929, at *2, (S.D. Ohio July 27, 2006) (C.J. Dlott) ("Local Rule 7.1(b)(2) leaves the Court with discretion whether to grant a request for oral argument.").

## I.  BACKGROUND

Plaintiff was allegedly injured while working as a concrete finisher for Jostin Construction, Inc. ("Jostin") at the Horseshoe Casino construction project in Cincinnati. Plaintiff brings this civil action against Defendants Messer Construction Co. ("Messer"), D.A.G. Construction Co., Inc. ("D.A.G."), Triversity Construction Co., LLC ("Triversity"), J & B Steel Erectors, Inc. ("J & B Steel"), Terracon Consultants, Inc., and Pendleton Construction Group, LLC, each of whom allegedly had responsibilities related to the construction project.  Plaintiff claims that Defendants were negligent.[2]  He also seeks punitive damages.

Defendant Messer moves for summary judgment on the grounds that (1) it is entitled to immunity under Ohio's workers' compensation laws as a self-insuring employer and (2) the election of remedies doctrine bars Plaintiff from pursuing his claim against Defendant Messer.

Defendants D.A.G., Triversity, and J & B Steel argue that they are entitled to immunity under Ohio's workers' compensation laws as enrolled subcontractors under Defendant Messer's workers' compensation program.

## II.  UNDISPUTED FACTS[3]

1.  At the time of his alleged injuries, Plaintiff Daniel Stolz was working for Jostin as a concrete finisher at the construction project for the Horseshoe Casino in Cincinnati, Ohio ("Casino Project").  (Doc. 49 at ¶ 1).

---

[2] Plaintiff also asserted an employer intentional tort claim against Defendant Messer only.  The Court previously dismissed this claim.  (*See* Doc. 33).

[3] *See* Doc. 14-1, Doc. 40-2, Doc. 56 at 12-13, and Doc. 63-1.

2. Defendant Messer was the general contractor for the Casino Project and Jostin was one of its subcontractors. (Doc. 49 at ¶¶ 1, 4; Doc. 14-2 at ¶¶ 1-4).

3. Prior to Plaintiff's accident, Messer had obtained authority from the Ohio Bureau of Workers' Compensation ("BWC") to self-administer the workers' compensation program for all of the enrolled subcontractors on the Casino Project. (Doc. 14-2 at ¶¶ 1-4; Doc. 14-3).

4. Plaintiff's employer, Jostin, was an enrolled subcontractor participating in Messer's workers' compensation program under the certificate of authority issued by the BWC to Messer. (Doc. 14-2 at ¶¶ 1-4; Doc. 14-3; Doc. 14-4).

5. J & B Steel was an enrolled subcontractor participating in Messer's workers' compensation program for the Casino Project under the certificate of authority issued by the BWC to Messer. (*See* Doc. 14-2 at ¶3; Doc. 14-4).

## III.   STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

### IV.    ANALYSIS

**A. Defendant Messer**

**1.      Workers' Compensation Immunity**

Workers' compensation "represents a social bargain in which employers and employees exchange their respective common-law rights and duties for a more certain and uniform set of statutory benefits and obligations."  *Holeton v. Crouse Cartage Co.*, 92 Ohio St. 3d 115, 119, 2001-Ohio-109, 748 N.E.2d 1111.  In the event an employee is injured in a work-related incident, he is entitled to workers' compensation benefits, even if the employer is not to blame for the employee's injury.  In exchange, the employer receives tort immunity for work-related injuries.  *See* Ohio Rev. Code ("O.R.C.") §§ 4123.35, 4123.74.[4]  This exchange of rights is referred to as the *quid pro quo*.  *See Washington Metro. Area Transit Auth. v. Johnson,* 467 U.S. 925, 931 (1984).

The "exclusivity rule" dictates that an employee who is injured in the course of his employment must accept workers' compensation benefits as his exclusive remedy vis-à-vis his employer.  *See Freese v. Consolidated Rail Corp*., 4 Ohio St.3d 5, 7, 445 N.E.2d 1110 (1983) (citing  O.R.C. § 4123.74); *Saunders v. Holzer Hosp. Found*., 2009-Ohio-2112, at ¶ 21 (4th Dist. April 30, 2009) (quoting *Kaiser v. Strall* (1983), 5 Ohio St.3d 91, 94, 449 N.E.2d 1) ("'[c]laimants enjoy no prerogative, constitutional or otherwise, to

---

[4] "[Ohio's] Workers' Compensation Act 'operates as a balance of mutual compromise between the interests of the employer and the employee whereby employees relinquish their common law remedy and accept lower benefit levels coupled with the greater assurance of recovery and employers give up their common law defenses and are protected from unlimited liability.'" *Holeton,* 92 Ohio St.3d at 119 (quoting *Blankenship v. Cincinnati Milacron Chem., Inc.,* 69 Ohio St.2d 608, 614, 433 N.E.2d 572 (1982)).

choose between workers' compensation and common-law remedies where the former has been legislatively deemed to provide the exclusive means of recovery.'").

On most projects, contractors and subcontractors provide their own liability and workers' compensation coverage.  However, under certain circumstances, contractors on large-scale construction projects may self-insure the project, whereby the employees of subcontractors enrolled in the self-insurer's plan for that project are treated as employees of the self-insuring contractor for purposes of workers' compensation.  O.R.C. § 4123.35(O).[5]  Section 4123.35(O) expressly confers on a construction project self-insurer the protections of Chapters 4123 and 4121:

> A self-insuring employer who complies with this division is entitled to the protections provided under this chapter and Chapter 4121. of the Revised Code with respect to the employees of the contractors and subcontractors covered under a certificate issued under this division for death or injuries that arise out of, or death, injuries, or occupational diseases that arise in the course of, those employees' employment on that construction project, as if the employees were employees of the self-insuring employer, provided that the self-insuring employer also complies with this section.

Section 4123.74 provides:

> Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval the employer is a self-insuring employer, whether or not such injury, occupational disease, bodily condition, or death is compensable under this chapter.

---

[5] In order for a contractor to be eligible to act as a self-insurer with regard to workers' compensation, the project must be scheduled for completion within six years after the date it begins and have an estimated total cost to exceed one hundred million dollars.  O.R.C. § 4123.35(O).

The Ohio Bureau of Workers' Compensation ("BWC") issued a "Certificate of Employer's Right to Pay Compensation Directly" for "Subs 2000 4170-2 Horseshoe Casino - Cincinnati Wrap Up" ("certificate of authority") to Defendant Messer, effective March 1, 2011 to March 1, 2012.  (Doc. 14-2 at ¶¶ 1-2; Doc. 14-3).  The list of "subs" identified under this "Wrap Up" included Plaintiff's employer, Jostin.  (Doc. 14-2 at ¶¶ 3-4; Doc. 14-4).  It is undisputed that Plaintiff was Jostin's employee and that Jostin was an enrolled subcontractor under Defendant Messer's workers' compensation plan.  (Doc. 49 at ¶ 1; Doc. 14-2 at ¶¶ 1-4; Doc. 14-3; Doc. 14-4).  Accordingly, sections 4123.35(O) and 4123.74 impart workers' compensation immunity upon Defendant Messer for any injuries sustained by Plaintiff while working on the Casino Project, since he was an employee of enrolled subcontractor Jostin.

Plaintiff argues that because Defendant Messer failed to comply with the requirements set forth in section § 4123.35, Messer is not entitled to the immunity set forth in Section 4123.74.  *See* O.R.C. § 4123.35(O) (granting self-insuring employers the protections of Chapters 4123 and 4121 "provided that the self-insuring employer also complies with this section");  O.R.C. § 4123.74 (providing that "[e]mployers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute").  Specifically, Plaintiff contends that Defendant Messer did not adequately comply with the requirements set forth in O.R.C. § 4123.35 (O), (P) and (E) and Ohio Adm. Code § 4123-19-16(E).

As an initial matter, the Court notes that the BWC found that Defendant Messer *had* complied with the requirements of section 4123.35. The BWC certified on the face of the Certificate of Authority that "on the date hereof the named employer [Defendant Messer] *having met the requirements provided in Section 4123.35 of the Ohio Revised Code* has been granted authority to pay compensation directly to its injured[.]" (Doc. 14-3) (emphasis supplied).[6] Plaintiff has not pointed to any case law to support its contention that an entity's deviation from technical statutory requirements allows a party who has participated in the entity's workers' compensation program, and accepted benefits thereunder,[7] to sue the entity for negligence. Nor has Plaintiff demonstrated that

---

[6] It was within the BWC's discretion to determine whether Messer had met the requirements to self-insure the Casino Project. *See* Ohio Adm. Code § 4123-19-16(B) ("The purpose of this rule is to establish standards by which the administrator may permit a responsible self-insuring employer to self-insure a construction project entered into by the responsible self-insuring employer pursuant to division (O) of section 4123.35 of the Revised Code."); *see also* Ohio Adm. Code § 4123-19-16(C) (acknowledging that "[t]he administrator's authority to grant self-insured status for a construction project is permissive"); *State ex rel. Vaughn v. Indus. Commission of Ohio*, 69 Ohio St.2d 115, 119, 430 N.E.2d 1332 (1982) (recognizing that the BWC has "substantial discretion" in determining whether to revoke a company's self-insured status); *State ex rel. Medcorp, Inc. v. Ryan*, 10th Dist. Franklin No. 06AP-1223, 2008-Ohio-2835, ¶¶ 51-60 (finding that the decision of whether to grant an application for self-insured status lies within the BWC's discretion).

[7] Defendant Messer proposed the following as an undisputed fact: "Plaintiff has participated in Messer's Workers' Compensation plan and received medical care, treatment, and attention at no cost to himself under that plan as an injured employee of the enrolled subcontractor Jostin." (Doc. 14-1). Plaintiff denied this proposed undisputed fact "for lack of sufficient evidence" without presenting or pointing to any evidence demonstrating that Plaintiff had not received and retained coverage for his injuries under Messer's Workers' Compensation program. (*See* Doc. 56 at 12). This denial is insufficient to avoid summary judgment under Fed. R. Civ. P. 56, which requires the party opposing summary judgment to set forth specific facts indicating the existence of a genuine issue to be litigated, *Univ. of Pittsburgh v. Townsend*, 542 F.3d 513, 522 (6th Cir. 2008), and this Court's standing order for summary judgment motions, which requires each denial of a proposed undisputed fact to be supported by "a specific citation or citations" to the evidence supporting the denial. Plaintiff has failed to present any evidence demonstrating that there is a material issue of fact as to whether he has received and retained coverage for his injuries under Defendant Messer's workers' compensation program. Indeed, the evidence before the Court clearly demonstrates that Plaintiff has in fact received and retained coverage for his injuries from Defendant Messer. (Doc. 14-2 at ¶¶ 2-4; Doc. 57-1 at 60-61).

he was harmed in any manner by the alleged deviations from the statutory and administrative requirements.

Further, Defendant Messer became liable for providing workers' compensation for injured employees of enrolled subcontractors at the Casino Project upon approval of the application, regardless of whether the rules and statutes had been strictly followed. *See* Ohio Adm. Code § 4123-19-16(F). Thus, according to Plaintiff's logic, Defendant Messer would be required to provide workers' compensation coverage upon approval of its application but would not be entitled to the benefits of immunity because Defendant Messer did not strictly comply with relevant statutes or administrative rules,

Finally, Plaintiff's attempt to bring a negligence claim against Defendant Messer runs contrary to the underlying purpose of Ohio's workers' compensation system. Plaintiff participated in Defendant Messer's workers compensation plan and received medical care, treatment, and attention at no cost to himself under that plan as an injured employee of enrolled subcontractor Jostin. Defendant Messer's risk manager testified that Defendant Messer would not have paid Plaintiff's claims if the certificate of self-insurance being challenged by Plaintiff had not been issued. (Doc. 57-1 at 61). Plaintiff seeks to retain the benefits he received under the workers' compensation system, the assurance of recovery, while simultaneously seeking to avoid his own obligations by denying Defendant Messer immunity.

For these reasons, Defendant Messer is entitled to immunity from Plaintiff's negligence claim pursuant to O.R.C. §§ 4123.35 and 4123.74.

2.    **Dual Capacity Doctrine**

Plaintiff also argues that Defendant Messer is liable pursuant to the dual capacity

doctrine.[8]  The dual capacity doctrine "is a narrow exception to the general rule of

employer statutory immunity in negligence suits brought by employees."  *Shane v.*

*Dlubak Glass Co.*, No. 3:03CV7721, 2005 WL 1126729, at *7 (N.D. Ohio Apr. 29,

2005).

> [I]n order for the dual-capacity doctrine to apply, there must be an allegation and
> showing that the employer occupied two independent and unrelated relationships
> with the employee, that at the time of these roles of the employer there were
> occasioned two different obligations to this employee, and that the employer had
> during such time assumed a role other than that of employer.

*Freese*, 4 Ohio St.3d at 12.  Such a showing is not made where the injuries suffered were

incurred during the course of employment as a result of the employer's alleged failure to

maintain a safe work place.  *See id.*  "In other words, the 'dual-capacity doctrine' does

not apply where the employee seeks 'to sue his employer for injuries which are

predominately work-related.'" *Rivers v. Otis Elevator*, 8th Dist. Cuyahoga No. 99365,

2013-Ohio-3917, ¶14 (quoting *Schump v. Firestone Tire & Rubber Co.*, 44 Ohio St.3d

148, 150 (1989)).

Here, Defendant Messer is not Plaintiff's actual employer.  Although O.R.C.

§ 4123.35(O) provides that Defendant Messer is treated *as if* it were Plaintiff's employer

---

[8] Defendant Messer contends that this argument must be disregarded because this basis for liability was
not set forth within the amended complaint (Doc. 49) and is raised for the first time in Plaintiff's
memorandum opposing summary judgment (Doc. 56).  Because the Court finds the dual capacity
argument to be without merit, the Court  need not reach the question of whether the argument was
forfeited.

for the purposes of determining immunity, it does not create an actual employment relationship. In fact, the statute specifically states that employees of covered subcontractors are not considered employees of the self-insuring employer for any purpose other than immunity and self-insuring employers have no authority under the statute to control the means, manner, or method of the subcontractor employee's work.

Further, Plaintiff's injuries were undisputedly work related and were allegedly related to Messer's failure to provide a safe working environment. (*See* Doc. 56 at 8-9.) Such injuries are insufficient, as a matter of law, to invoke the dual capacity doctrine. *Freese*, 4 Ohio St.3d at 12; *Rivers,* 2013-Ohio-3917, at ¶14. Here, there is no that Plaintiff's injuries were a direct result of his work at the Casino Project and were not merely incidental. (*See* Doc. 49 at ¶ 14-15). Accordingly, Plaintiff has failed to raise a genuine issue of material fact related to the applicability of the dual capacity doctrine, and the Court finds that the dual capacity doctrine does not apply.

### 3. Election of Remedies Doctrine

Because this Court has determined that Defendant Messer is entitled to immunity pursuant to statute, the Court need not address Defendant Messer's alternative argument, that it is entitled to summary judgment pursuant to the election of remedies doctrine. However, assuming *arguendo* that Defendant Messer is *not* entitled to such immunity, the Court finds that Defendant Messer would still be entitled to summary judgment pursuant

to the election of remedies doctrine.[9]

### 4.    Punitive Damages

Plaintiff seeks to recover punitive damages from Defendant Messer.  A punitive damages claim is a derivative action that must be dismissed where the primary claim is subject to summary judgment.  *Vickers v. Wren Industries, Inc.*, 2d Dist. Montgomery No. 20914, 2005-Ohio-3656, at ¶¶ 63-65.  Because this Court has already dismissed Plaintiff's intentional tort claim (*see* Doc. 33), and because this Court determines that Defendant Messer is entitled to summary judgment on Plaintiff's remaining negligence claim, the derivative punitive damages claim against Defendant Messer must also be dismissed.

## B.    Defendants D.A.G., Triversity, and J & B Steel

Defendants D.A.G., Triversity, and J & B Steel ("Subcontractor Defendants") were enrolled subcontractors within Defendant Messer's workers' compensation

---

[9] The election of remedies doctrine provides that an employee who accepts workers' compensation benefits is foreclosed from later bringing a negligence action against the provider of those benefits.  *See Smith v. Turbo Parts LLC*, No. 2:10-CV-00202, 2011 WL 796793, at *4-*5 (S.D. Ohio Mar. 1, 2011); *Saunders v. Holzer Hosp. Found.*, 4th Dist. Gallia No. 08CA11, 2009-Ohio-2112, ¶¶19-22; *Switka v. Youngstown*, 7th Dist. Mahoning No. 05MA74, 2006-Ohio-4617, ¶31; *Catalano v. Lorain*, 161 Ohio App.3d 841, 2005-Ohio-3298, 832 N.E.2d 134, ¶¶12-13.  In the typical case, this provider is the employee's employer.  Plaintiff argues that the doctrine does not apply because Defendant Messer was not Plaintiff's employer.  However, section 4123.35(O) specifically provides that a self-insuring employer of a construction project, such as Defendant Messer, is entitled to the protections of immunity under section § 4123.74 "with respect to the employees of the contractors and subcontractors . . . *as if the employees were employees of the self-insuring employer*[.]" (emphasis supplied).  It is undisputed that Plaintiff received and retained workers' compensation benefits from Defendant Messer.  (Doc. 14-2 at ¶¶ 2-4; Doc. 57-1 at 60-61).  The provision of these benefits by Defendant Messer, and the acceptance of these benefits by Plaintiff, render the election of remedies doctrine applicable.

coverage. (Doc. 14-2 at ¶3; Doc. 14-4).[10] These Defendants argue that the receipt of

workers' compensation benefits was Plaintiff's exclusive remedy and that, as enrolled

subcontractors, they are also entitled to workers' compensation immunity from Plaintiff's

negligence claim pursuant to O.R.C. §§ 4123.35 and 4123.74.[11] In addition to providing

immunity for self-insuring employers as set forth above, section 4123.35(O) provides as

follows:

> The contractors and subcontractors included under a certificate issued under this
> division are entitled to the protections provided under this chapter and Chapter
> 4121. of the Revised Code with respect to the contractor's or subcontractor's
> employees who are employed on the construction project which is the subject of
> the certificate, for death or injuries that arise out of, or death, injuries, or
> occupational diseases that arise in the course of, those employees' employment on
> that construction project.

## 1.    Workers' Compensation Immunity

The Court's paramount concern in construing a statute is legislative intent. *See*

*State ex rel. Steele v Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107,

¶ 21. To discern legislative intent, the Court first considers the statutory language,

reading words and phrases in context and in accordance with rules of grammar and

common usage. *Id.* (citing *State ex rel. Rose v. Lorain Cty. Bd. of Elections* 90 Ohio

---

[10] The fact that Defendant J & B Steel was an enrolled subcontractor participating in Messer's workers'
compensation program for the Casino Project under the certificate of authority issued by the BWC is
undisputed. *See* Docs. 40-2, 63-1. Defendants D.A.G. and Triversity did not propose undisputed facts for
Plaintiff's review. However, because Defendants D.A.G. and Triversity's contention that they were
enrolled subcontractors is supported by undisputed evidence submitted to the Court (*see* Doc. 14-4)
(listing "D.A.G. Construction" and "TriVersity Group LLC"), the Court considers Defendants D.A.G. and
Triversity's enrollment to be an undisputed fact as well.

[11] Defendants D.A.G., Triversity, and J & B Steel admit that they were not statutory self-insuring
employers. (*See* Docs. 62-1, 62-2, and 62-3; *see also* Doc 65 at 2). Accordingly, they are not entitled to
immunity on that ground.

St.3d 229, 231, 736 N.E.2d 886 (2000); O.R.C. 1.42). "If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary." *State ex rel. Savarese v. Buckeye Local Sch. Dist. Bd. of Educ.*, 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996). A court must "read and understand statutes 'according to the natural and most obvious import of the language, without resorting to subtle and forced constructions.'" *Ohio Neighborhood Fin., Inc. v. Scott*, 139 Ohio St.3d 536, 2014-Ohio-2440, 13 N.E.3d 1115, ¶ 22 (quoting *Lancaster v. Fairfield Cty. Budget Comm.*, 83 Ohio St.3d 242, 244, 699 N.E.2d 473 (1998)). Unambiguous statutes are to be applied according to the plain meaning of the words used. *Roxane Laboratories, Inc. v. Tracy*, 75 Ohio St. 3d 125, 127, 661 N.E.2d 1011(1996). Courts are not free to delete or insert other words. *See State ex rel. Cassels v. Dayton City School Dist. Bd. of Ed.*, 69 Ohio St. 3d 217, 220, 631 N.E.2d 150 (1994).

To read section 4123.35(O) in a manner which grants tort immunity to Subcontractor Defendants for injuries sustained by another subcontractor's employee is contrary to the plain language of the statute. Section 4123.35(O) states, "the contractors and subcontractors included under a certificate . . . are entitled to the protections provided under this chapter and Chapter 4121 of the Revised Code with respect to the contractor<u>'s</u> <u>or</u> subcontractor<u>'s</u> employees . . . ." (emphasis added). The words "contractor<u>'s</u>" and "subcontractor<u>'s</u>" are written in the singular possessive form, *not* in the plural possessive form.[12] If the statute read "contractor<u>s'</u> and subcontractor<u>s'</u>" Subcontractor Defendants

---

[12] *See also* Ohio Adm. Code §4123-19-16(H) ("The contracting and subcontracting employees included under the certificate are entitled to the protections provided under Chapters 4121. and 4123. of the

would have a stronger argument that they are immune from liability in regard to multiple contract<u>rs'</u> and subcontract<u>ors'</u> employees.[13]

As the statute is written, each subcontractor is only protected from liability for injuries to one of the subcontractor's employees—its own. Even though the subcontractor is not providing the workers' compensation coverage on the job to their own employees, the Ohio General Assembly pronounced that the subcontractors are still entitled to tort immunity from their own employees.[14] If the General Assembly intended for immunity to extend to all subcontractors for injuries sustained by the employees of *all* the subcontractors, it would have written the statute in a manner that indicated such.[15]

---

Revised Code with respect to the contracting and subcontracting employer<u>'s</u> employees who are employed on the construction project which is the subject of the certificate.")

[13] Subcontractor Defendants argue that the singular possessive form is used because the phrase simply defines the qualifying employees of an enrolled contractor or subcontractor and that it is the first phrase ("the contractors and subcontractors included under a certificate") that defines the contractors and subcontractors that are entitled to immunity. However, and notwithstanding O.R.C. § 1.43 (providing, as a rule of construction, "[t]he singular includes the plural, and the plural includes the singular"), the fact that the General Assembly referenced "the contractors and subcontractors included under a certificate" in the first phrase simply *highlights* the fact that the General Assembly did *not* use this same language in the second phrase. Accordingly, the Court finds that Ohio General Assembly intended to limit the protections afforded to these contractors and subcontractors as set forth above.

[14] Subcontractor Defendants argue that although the self-insured employer, Defendant Messer, covered the cost of the workers' compensation claims on the Project, enrolled subcontractors indirectly "paid" the cost of workers' compensation premiums and other insurance by eliminating those costs from their contract bids. (Doc. 7-1 at 13-14; Doc. 66-1 at ¶ 3-4). While section 4123.35(O) may be an exception to the typical *quid pro quo* bargain underlying workers' compensation, the bargain is still intact insofar as the subcontractors are entitled to tort immunity from their own employees. Subcontractor Defendants also argue that the statute necessarily provides blanket coverage, given the scale of construction projects which are eligible for self-insured status. However, even without blanket immunity, the scheme provides immunity for the self-insured employer and the employer subcontractor.

[15] Subcontractor Defendants argue that the Ohio General Assembly could have inserted the word "own" into the statute if it intended to so limit the immunity available to enrolled subcontractors. Similarly, the Ohio General Assembly could have used "contract<u>ors'</u> and subcontract<u>ors'</u>" to describe the employees with respect to whom immunity applies it intended blanket immunity. The Court is tasked with interpreting the statute as written.

To grant blanket immunity to Subcontractor Defendants, the Court would have to read protections into the statute that are not there.  *See Holmes v. Crawford Machine, Inc.,* 134 Ohio St. 3d 303, 2012-Ohio-5380, 982 N.E.2d 643, ¶ 10 (citing *State ex rel. Burrows v. Indus. Comm.,* 78 Ohio St.3d 78, 81, 676 N.E.2d 519 (1997)) (The court "must apply the section in a manner consistent with the plain meaning of the statutory language; [it] cannot add words.").  The clear and unambiguous meaning of the statute, as written, is that immunity does not extend to the Subcontractor Defendants with respect to employees of other subcontractors.

In relation to Plaintiff, the Subcontractor Defendants have not met their end of the social bargain.  They have not made contributions to the workers' compensation fund on Plaintiff's behalf, nor have they self-administered workers' compensation benefits to him on the instant project.  It contravenes the workers' compensation scheme to provide Subcontractor Defendants immunity when they have not earned it.  To do so would not uphold the social bargain, rather, it would constitute a "free pass" on their alleged liability for their role in the injuries sustained by Plaintiff.

Subcontractor Defendants cite *Lancaster, et al. v. Pendleton Construction Group, LLC, et al.*, Hamilton C.P. No. A1208721 (Mar. 25, 2013) (order granting summary judgment), as support for their argument that they should receive blanket immunity. *Lancaster* arose from the same incident that led to Plaintiff's injuries; the *Lancaster* plaintiffs were other Jostin employees who alleged that the negligence of Defendants Messer, D.A.G., Triversity, J & B Steel, and others caused their injuries.  In *Lancaster*, Subcontractor Defendants moved for summary judgment on the same theory asserted in

the instant litigation. The *Lancaster* court acknowledged that whether these subcontractors would be immune from claims made against them by the employees of another subcontractor had not been decided by the Ohio courts in the context of a self-insured construction project. *Id.* at *7.

The *Lancaster* court concluded that Messer was the "constructive employer" of the three moving subcontractors and that, as "constructive employees" of Messer, "the Plaintiffs received from their constructive employer the benefits of the 'social bargain' to which they were entitled under the Worker's Compensation statute." *Lancaster,* at *6. The court acknowledged that many other jurisdictions would allow the plaintiffs to bring their claim against these subcontractors, but held that Ohio law does not. *Id.* at *7.[16]

The *Lancaster* court discussed *Pride v. Liberty Mutual Ins. Co.,* No. 04-C-703, 2007 WL 1655111 (E.D. Wisc. June 5, 2007), a factually similar Wisconsin case that declined to extend this sort of immunity. The federal court in *Pride* pointed out a number of reasons why subcontractors under a wrap-up plan should not be entitled to immunity from claims made by employees of fellow subcontractors. *Id.* at *2-4. First, a wrap-up plan saves the subcontractors money because they do not have to pay for insurance coverage. *Id.* at *3. The court questioned the logic behind allowing a subcontractor to

---

[16] Subcontractor Defendants cite *Stevenson v. HH &N/Turner*, 2002 U.S. Dist. LEXIS 26831 (E.D. Mich. 2002) and *Etie v. Walsh & Albert Co., Ltd.,* 135 S.W.3d 764 (Tex. App. 2004) to support their argument that immunity should be extended to enrolled subcontractors. As in *Stevenson*, the application of immunity to the participants in Defendant Messer's plan is dictated by statute and unique to large-scale construction projects. As the Texas statute discussed in *Etie*, the Ohio statute authorizes a contractor to provide workers' compensation insurance for subcontractors and their employees and deems employees of the subcontractors to be employees of the general contractor for purposes of the workers' compensation. However, this Court is bound by the statutory language of O.R.C. § 4123.35(O) which, as explained above, does *not* provide for blanket immunity for enrolled subcontractors.

16

not pay for its insurance coverage, and in return, granting a subcontractor immunity it would not otherwise have. *Id.* The court also noted that extending immunity did not comport with the *quid pro quo* of workers' compensation because there was no indication that the plaintiff "bargained away any of his rights" to the fellow subcontractor. *Id.* at *4. The court concluded by finding that allowing the contractor and subcontractors "to contract each other out of tort liability would afford the other employers a *quid* without any additional *quo* going to the injured employee." *Id.*[17] However, the *Lancaster* court found what it claimed to be a "glaring distinction" between the Wisconsin statute and the Ohio statute: Wisconsin's statute states that an employee's claim against an employer does not affect the right of the employee to bring suit against a third party, while "Ohio's Workers' Compensation Act provides no such allowance for third party claims." *Lancaster,* at *6-7.

The fact that Ohio's workers' compensation statutes do not expressly state that one who receives workers' compensation is entitled to bring a claim against a third party tortfeasor, does not mean that they do not have the right to do so. The relevant fact is not that the Ohio workers' compensation act does not grant this right to plaintiffs; the relevant fact is that section 4123.35(O) *does not take this right away* from plaintiffs. *See* O.R.C. § 4123.35(O) ("Nothing in this division shall be construed as altering the rights of

---

[17] Subcontractor Defendants argue that the *Pride* decision is distinguishable from the instant case because what the *Pride* decision suggests as the language the Wisconsin legislature could have included to provide subcontractor immunity ("the owner of an OCIP-insured project is deemed the sole employer of any employee of any contractor injured on that project) is the very language the Ohio General Assembly did include in §4123.35(O). However, the Ohio General Assembly went on to specifically address the immunity of enrolled subcontractors, so that provision controls.

employees under this chapter and Chapter 4121. of the Revised Code as those rights existed prior to September 17, 1996."). "[T]he law is well settled in Ohio that, if a person is injured at such a time and in such a manner by the negligence of a third person, while engaged in an occupation for which he would be entitled to compensation against his employer, he may still sue and recover against the third party who causes the injury." *Trumbull Cliffs Furnace Co. v. Shackovsky,* 27 Ohio App. 522, 161 N.E. 238, 239 (8th Dist. 1923) *aff'd sub nom,* 111 Ohio St. 791, 146 N.E. 306 (1924); *George v. City of Youngstown,* 41 N.E.2d 567, 569 (1942) ("[W]orkmen's compensation statutes relate solely to the relationship of employer and employee."). Since it has been established that, under the workers' compensation act, a plaintiff who has received workers' compensation payments maintains the right to make a claim against a third-party tortfeasor, and nothing in this section expressly revokes that right, Plaintiff in the present case has the right to bring a claim against any third parties that contributed to his injury, including Subcontractor Defendants.[18] In light of the fact that the plain language of the statute does not grant the broad immunity the Subcontractor Defendants seek, Plaintiff maintains the right to bring suit against them.

For the foregoing reasons, the Court decides as a matter of law that Subcontractor Defendants are not entitled to immunity under section 4123.35(O) from Plaintiff's negligence claim. Therefore, the Court denies Subcontractor Defendants' motions for summary judgment.

---

[18] The *Lancaster* court described the plaintiffs' position as an attempt to seek twice the benefit of their counterparties and as at odds with the spirit of the "social bargain" struck by the workers' compensation system. *Lancaster*, at *7, 9. In light of the fact that Ohio law does not prohibit third party claims, this Court cannot agree.

## 2.    Punitive Damages

Subcontractor Defendants move the Court to dismiss Plaintiff's claim for punitive damages against them on the grounds that it is a derivative claim. *See Vickers,* 2005-Ohio-3656 at ¶¶ 63-65. Because this Court finds that Subcontractor Defendants are not entitled to summary judgment on Plaintiff's negligence claim, the Court declines to dismiss Plaintiff's claim for punitive damages.

## V.    CONCLUSION

Accordingly, for the foregoing reasons:

1.    Defendant Messer Construction Co.'s motion for summary judgment (Doc. 14) is **GRANTED;**

2.    Defendants D.A.G. Construction Co., Inc. and Triversity Construction Co., LLC's motion for summary judgment (Doc. 37) is **DENIED;**

3.    Defendant J & B Steel Erectors, Inc.'s motion for summary judgment (Doc. 40) is **DENIED.**

4.    The remaining parties shall jointly submit a proposed litigation calendar by January 23, 2015.

**IT IS SO ORDERED**.


Date:  12/31/14                                        */s/ Timothy S. Black*
                                                      Timothy S. Black
                                                      United States District Judge