# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DANIEL STOLZ,

      Plaintiff,

                              **Case No. 1:14-cv-44**

     v.                    **JUDGE DOUGLAS R. COLE**

J & B STEEL ERECTORS, INC.,
*et al.*,

      Defendants.

## <u>OPINION AND ORDER</u>

This cause comes before the Court on the Motion to Dismiss (Doc. 111) filed by Defendants J & B Steel Erectors, Inc.; D.A.G. Construction, Inc.; Pendleton Construction Group, LLC; and TriVersity Construction Co., LLC (collectively the "Enrolled Subcontractor Parties"), which addresses issues that relate solely to Plaintiff Daniel Stolz's challenges under the United States Constitution to an Ohio Workers' Compensation statute, Ohio Rev. Code § 4123.35(O) (the "Self-Insuring Employer Statute").

The federal constitutional issues are all that remain in this case after not one, but two, trips to the Supreme Court of Ohio on certified questions, both of which resolved, in a manner contrary to Stolz's desired position, certain *other* issues that Stolz had pressed in this action. On the first trip, Stolz argued that as a matter of statutory interpretation the Self-Insuring Employer Statute, which grants immunity from suit to various entities for certain work-related injuries that occur at construction sites (and instead provides that recovery for such injuries solely will be through the

Workers' Compensation System), did not apply to the Enrolled Subcontractor Parties in this case, as they were not his employers. The Ohio Supreme Court disagreed, finding that the statute bars Stolz from suing the Enrolled Subcontractor Parties, who, while not his employer, were other "enrolled subcontractors," a term that refers to those subcontractors included in the self-insured group under the statute (more on that below) working on the same project as the subcontractor that employed Stolz. *Stolz v. J & B Steel Erectors, Inc.*, 146 Ohio St. 3d 281, 2016-Ohio-1567 ("*Stolz I*").

On his second trip, Stolz argued that the Self-Insuring Employer Statute, if interpreted to immunize non-employer enrolled subcontractors, violated the Ohio Constitution. The Ohio Supreme Court rejected that argument as well. *Stolz v. J & B Steel Erectors, Inc.*, 155 Ohio St. 3d 567, 2018-Ohio-5088 ("*Stolz II*").

As the Ohio Supreme Court's interpretations of Ohio statutes and the Ohio Constitution are binding on this Court, the sole question remaining here relates to Stolz's claims that the Ohio statute, as interpreted by the Ohio Supreme Court, violates the United States Constitution. The Enrolled Subcontractor Parties now seek dismissal, claiming that Stolz's arguments under the federal Constitution fail as a matter of law. (There are also two non-moving subcontractor defendants in this action, which were not "enrolled subcontractors" on the project. This Order does not apply to them.) More specifically, Stolz advances three constitutional arguments: (1) that the Self-Insuring Employer Statute violates the Seventh Amendment's jury trial guarantee; (2) that the statute violates the Due Process Clause under the Fourteenth Amendment; and (3) that the statute violates the Fourteenth Amendment's

Equal Protection Clause. The Court finds, however, that Stolz has not pled a viable legal theory as to any of the three, and thus the Court **DISMISSES** this action against the Enrolled Subcontractor Parties **WITH PREJUDICE**.

## I.    BACKGROUND

### A.    The Relevant Facts.

This Court has previously summarized the relevant facts in certifying the first question of law to the Ohio Supreme Court in *Stolz I*. The plaintiff, Daniel Stolz, worked as a concrete finisher for Jostin Construction, Inc., a subcontractor on a construction project at the Horseshoe Casino in Cincinnati (the "Casino Project"). Stolz was injured during the course of his work on that project. As a result, he brought claims for negligence in this Court against the general contractor, Defendant Messer Construction Company ("Messer"), and various other subcontractors, including, as relevant here, J & B Steel Erectors ("J & B Steel"), D.A.G. Construction Co., Inc. ("D.A.G."), and TriVersity Construction Co., L.L.C. ("TriVersity") (collectively the "Enrolled Subcontractor Parties"). (Stolz also sued two other subcontractors in this action. As noted above, his claims against those subcontractors are not at issue here.)

Before the accident that injured Stolz occurred, Messer had applied for and obtained authority from the Ohio Bureau of Workers' Compensation ("BWC") to act as the self-insuring employer under Section 4123.35(O). *Stolz II*, 155 Ohio St. 3d at 568. Under that statute, Messer was thus responsible for providing workers' compensation coverage for its own employees, as well as for the employees of any enrolled subcontractors on the Casino Project, *i.e.*, those subcontractors who are listed on the

contractor's application to self-insure, *see id.*, a group that in this case included the Enrolled Subcontractor Parties who have collectively filed the present motion to dismiss. (The other two subcontractors were not part of the group of enrolled subcontractors on the project.)

The Enrolled Subcontractor Parties sought judgment as a matter of law, claiming that they were immune from suit on Stolz's negligence claims due to the Self-Insuring Employer Statute, and that Stolz's sole mechanism for recovery was his workers' compensation claim. This Court granted summary judgment to the general contractor, Messer, but found that claims could proceed against the Enrolled Subcontractor Parties, other than the subcontractor that employed Stolz, as the workers' compensation statutes immunized subcontractors from suits by their own employees, but not from suits by employees of other subcontractors.

The Enrolled Subcontractor Parties then asked this Court to certify that question of Ohio law—whether Stolz could proceed against enrolled subcontractors other than his employer—to the Ohio Supreme Court, which this Court did. In *Stolz I*, the Ohio Supreme Court rejected this Court's analysis, holding that the Ohio's workers' compensation statute at issue, Section 4123.35(O), immunizes all enrolled subcontractors on a self-insured project against not only claims by their own employees, but also claims by employees of other enrolled subcontractors. *Stolz I*, 155 Ohio St. 3d at 287.

On return to this Court from the Ohio Supreme Court, Stolz amended his Complaint to assert that, as interpreted, Section 4123.35(O) violates the Ohio

Constitution and the United States Constitution by infringing "upon the right to trial by jury [and] . . . the constitutional right to remedy, and violat[ing] due process and equal protection." (Doc. 90, at ¶ 27, #918). Specifically, Stolz asserted that Section 4123.35 "unconstitutionally interferes with the judiciary's authority over the courts by unconstitutionally purporting to permit the legislature to dictate non-liability as a matter of law . . . [and] unconstitutionally denies certain injured employee tort victims, including Plaintiff, equal protection of the law by arbitrarily permitting some injured employees to receive full compensation for their injuries from third party tortfeasors while denying the same to injured employees employed on self-insured construction projects." (*Id.* at ¶¶ 28, 29).

This Court then certified to the Ohio Supreme Court another question: "Whether Ohio Rev. Code 4123.35(O) is unconstitutional [under the Ohio Constitution] as applied to the tort claims of an enrolled subcontractor's employee who is injured while working on a self-insured construction project and whose injury is compensable under Ohio workers' compensation laws." (Cert. Order, Doc. 107, #1054). The Ohio Supreme Court also accepted this second certification, *Stolz v. J & B Steel Erectors, Inc.*, 151 Ohio St. 3d 1451, 2017-Ohio-8842, and held that Section 4123.35(O) does not violate the Ohio Constitution. *Stolz II*, 155 Ohio St. 3d at 572.

Although Stolz originally claimed the statute, as applied, violated seven different provisions of the Ohio Constitution, in the proceedings before the Ohio Supreme Court on the certified question, Stolz pursued only two claims: that Section 4123.35(O) "violates the due-process and equal protection guarantees of the Ohio

Constitution." *Stolz II*, 155 Ohio St. 3d at 569. The Ohio Supreme Court rejected both of those claims.

As to the due process claim, Stolz argued that the immunity the statute offered to non-employer subcontractors violated his substantive due process rights. In particular, he claimed that the statutory immunity infringed two fundamental rights under the Ohio Constitution: "the right to a jury trial and the right to a remedy." *Id.* at 570. The Ohio Supreme Court rejected the jury-trial argument, finding that the right to a jury trial extended only to those civil cases "in which the right existed at the time of the adoption of the Ohio Constitution." *Id.* at 570–71. The Court noted that nothing prevented the Ohio General Assembly from altering or revising the common law, and that the legislature had done so by adopting workers' compensation statutes to replace common law liability rules in the workplace setting. *Id.* at 571. Because the claim under those statutes was not a claim at common law, the jury trial right under the Ohio Constitution did not apply. *Id.* at 571–72.

As for the right to a remedy, the Court noted that substituting a statutory cause of action for a common law right would violate the Ohio Constitution only if the statute imposed "a 'serious infringement on a clearly existing right to bring suit.'" *Id.* at 572 (quoting *Fabrey v. McDonald Vill. Police Dept.*, 70 Ohio St. 3d 351, 355 (1994)). Because the workers' compensation system provides "meaningful remedies for employees who [have] been injured[,]" it does not impose any serious infringement, and thus does not violate this fundamental right. *Stolz II*, 155 Ohio St. 3d at 571–72. Absent any fundamental right, the Ohio Supreme Court applied rational basis review

and found that Section 4123.35(O) easily met this threshold. *Id.* at 572–73. The statute "furthers the purposes of the workers' compensation system by putting a project with a general contractor and multiple subcontractors on the same footing as a large construction project undertaken by a single contractor." *Id.* at 572.

On the equal protection front, Stolz claimed that the statute violated this constitutional guarantee by treating him differently from "a worker on a traditional, state-funded project that does not take advantage of [Section] 4123.35's self-insured provision." *Id.* at 573. The Ohio Supreme Court noted that this was not a suspect classification, and that, for the reasons already noted, Stolz had failed to identify any fundamental right. Thus, the analysis under the Equal Protection Clause of the Ohio Constitution likewise would receive rational basis review, which the Ohio Supreme Court had already found the statute passed.

Having considered and rejected both arguments that Stolz presented under the Ohio Constitution, the Ohio Supreme Court answered the certified question in the negative, finding that Section 4123.35(O), as interpreted to immunize subcontractors on a self-insured project against claims by employees of other subcontractors, does not violate the Ohio Constitution. *Id.* at 574.

The Ohio Supreme Court's determinations on questions of Ohio law are of course binding on this Court. Thus, in connection with this Court's analysis of the instant motion, the Court takes as a given: (1) that Section 4123.35(O) immunizes all enrolled subcontractors in self-insured projects against claims by employees of other enrolled subcontractors; and (2) that the statute does not violate Ohio's Constitution.

## B.    The Instant Motion

In light of the Ohio Supreme Court's determinations, the Enrolled Subcontractor Parties now seek dismissal of Stolz's claims against them. Although those defendants fail to identify the basis for their motion, in his opposition, Stolz treats their motion as a motion under Rule 12(b)(6), and the Enrolled Subcontractor Parties, in their reply, do not take issue with that characterization. As the Enrolled Subcontractor Parties have apparently filed their motion in lieu of responding to the operative complaint, the characterization is likely correct. For future reference, though, it is helpful to the Court if the parties identify the procedural rule under which they file a motion, so as to avoid any possibility of confusion on that issue.

In their motion, the Enrolled Subcontractor Parties assert that Stolz's claims against them fail as a matter of law as a result of the immunity that they have under Section 4123.35(O). Given the Ohio Supreme Court's determinations, the Enrolled Subcontractor Parties are entitled to prevail on their motion unless Stolz can show some viable theory under which the Ohio statute, as interpreted, may violate the United States Constitution.

In that regard, Stolz identifies three potential candidates, arguing that the Ohio statute: (1) violates his Seventh Amendment jury trial rights; (2) violates the Due Process Clause of the Fourteenth Amendment; or (3) violates the Equal Protection Clause of that same amendment. As more fully described below, none of these presents a viable legal theory. Accordingly, the Court dismisses with prejudice this action against the Enrolled Subcontractor Parties.

## II. <u>LEGAL STANDARD</u>

In analyzing a motion under Rule 12(b)(6), the Court accepts the factual allegations in the complaint as true and asks whether the plaintiff has set forth a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court is required to accept *factual* allegations, the Court need not credit any legal conclusions the plaintiff puts forward in his complaint. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In his brief, Stolz instead asserts that the standard is whether he can prove any set of facts consistent with the allegations in his complaint under which he can prevail. While that was once the standard, *see Conley v. Gibson*, 355 U.S. 41 (1957), that is no longer so, *see Iqbal/Twombly*. And the Court declines to apply that standard here.

In any event, the standard of review ultimately matters little here. The arguments that that Enrolled Subcontractor Parties press in their motion are purely legal. And, as to such questions, whether before or after *Iqbal/Twombly*, the issue has largely remained the same—whether Stolz has identified a potentially viable legal theory under which the Enrolled Subcontractor Parties could be liable to him. Here, Stolz has failed to do so.

## III. <u>ANALYSIS</u>

As noted above, Stolz has identified three potential constitutional claims, one predicated on the Seventh Amendment (as allegedly incorporated under the Fourteenth Amendment), and two directly under the Fourteenth Amendment (a Due

Process claim and an Equal Protection claim). Because Stolz seeks to use the jury trial claim as at least a partial basis for the latter two challenges, the Court will begin with the Seventh Amendment jury trial issue before considering the Due Process and Equal Protection claims.

### A. Seventh Amendment

The Seventh Amendment to the United States Constitution provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved…." U.S. CONST. amend. VII. Stolz contends that, to the extent that Section 4123.35(O) precludes his suit for negligence against the Enrolled Subcontractor Parties, it necessarily interferes with his right to a jury trial on those claims, and it is thus unconstitutional.

To start, it is not clear that the Seventh Amendment even applies in the context of a state statute, such as the one here. The Supreme Court has never expressly incorporated the Seventh Amendment. *See McDonald v. City of Chicago*, 561 U.S. 742, 765 n.13 (2010) ("Our governing decisions regarding the … Seventh Amendment's civil jury trial requirement long predate the era of selective incorporation."). Thus, as Stolz is mounting a constitutional challenge to a state law, the Seventh Amendment may not be available to him as a basis for doing so.

Compounding the problem (or perhaps merely stating the problem differently), the Supreme Court has also held that, in a diversity case (like this one), the question of whether a party has a right to a jury is determined by reference to federal law, as the availability of a jury is a "procedural" issue rather than a "substantive" issue

10

under the *Erie* Doctrine. *See Simler v. Conner*, 372 U.S. 221, 222 (1963) ("[T]he right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions."). Thus, even if Stolz's right to recover, if any, arises under Ohio law, his entitlement to a jury, or lack thereof, in asserting that claim in this Court, would be determined by federal law, not state law.

At bottom, though, the real problem is that, even if the Seventh Amendment is incorporated, and even if state law (including the allegedly invalid state statute) did supply the rule of decision here, there is simply no underlying Seventh Amendment violation. This is true for two related reasons. First, by its plain text, the scope of the Amendment applies only to "Suits at common law." Thus, the Seventh Amendment jury trial right does not extend to statutory causes of action. *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937) (citation omitted). Here, the Ohio General Assembly has elected to abolish certain common law causes of actions—in particular, certain categories of negligence actions for work-related injuries—and replace them with a statutory cause of action for workers' compensation benefits. The Seventh Amendment, by its terms, does not apply to such actions.

Stolz acknowledges that, but claims it misses the point. His complaint, he says, is that he *wants* a negligence action against the Enrolled Subcontractor Parties, not solely a workers' compensation claim against the general contractor. And it is in depriving him of that negligence claim, and the corresponding jury right that would come with it, that the Seventh Amendment problem arises.

The shortcoming in this second argument, though, is that the Seventh Amendment is a form of procedural guarantee, not a substantive basis for recovery. That is, the Seventh Amendment provides, in suits at common law, a jury trial right. The Amendment does not provide a party the right to such a suit in the first instance, but rather only that, when a party in fact has a right to such a suit, he or she also has a right to a jury to decide that action.

For example, parties originally argued that the procedural rule that authorized courts to grant summary judgment where there were no disputed facts violated the Seventh Amendment as applied to common law causes of action, because the court's grant of summary judgment deprived a party of his or her right to have a jury decide the action. *See, e.g., Fidelity & Deposit Co. of Maryland v. United States*, 187 U.S. 315, 319–20 (1902). That argument ultimately lost, *see Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 (1979) (citing *Fidelity & Deposit Co.*, 187 U.S. at 319–21), but that is at least the type of issue falling within the ambit of the Seventh Amendment.

Understood that way, the problem for Stolz here is that Section 4123.35(O) does not deprive a party of a right to a jury *to decide* his cause of action, but rather, as the Enrolled Subcontractor Parties note in their motion, the statute abrogates Stolz's right to bring suit *at all*. That is simply not a Seventh Amendment concern. To illustrate further, imagine that the statute here instead provided that "any negligence suits by injured workers to recover for harms from work-related injuries shall be tried to the bench, rather than a jury." Such a statute would raise a potential Seventh Amendment concern because the legislature would be leaving the cause of action

12

itself in the realm of the common law, but depriving the party of a right to a jury trial to decide the result of that common law claim. By instead providing immunity, the statute here does not deprive Stolz of a jury; rather, the statute abolishes any cause of action at all, which does not implicate the Seventh Amendment.

Indeed, as the Enrolled Subcontractor Parties point out, the United States Supreme Court itself has acknowledged this result in the workers' compensation setting in companion cases decided approximately 100 years ago. In *New York Cent. R. Co. v. White*, 243 U.S. 188 (1917), and *Mountain State Timber Co. v. Washington*, 243 U.S. 219 (1917), the Court considered a host of constitutional challenges, some by employers and others by employees, to workers' compensation schemes that had been adopted in New York and Washington. One of those challenges, like the challenge Stolz presses here, was that by abrogating any common law negligence action and replacing it with a statutory workers' compensation claim, the worker was losing his Seventh Amendment right to a jury. For largely the same reasons discussed above, the Court concluded that abrogating the common law claim did not violate the Seventh Amendment. As the Court put it, given that "the act abolishes all right of recovery in ordinary cases, [it] therefore leaves nothing to be tried by a jury." *Mountain Timber*, 243 U.S. at 235. Just so here.

To be sure, in abolishing an underlying common law cause of action, a state could potentially violate a *different* provision of the Constitution. For example, if a state were to adopt a statute providing complete immunity with no alternative vehicle to provide a remedy, that could perhaps give rise to a due process claim. But that

would not be a Seventh Amendment right-to-jury problem, but instead a due-process unlawful-deprivation-of-liberty-or-property-interest claim. The Court will discuss such potential constitutional issues below in consideration of Stolz's other arguments, but the point here is merely that abolishing a cause of action *in toto* does not present a Seventh Amendment concern. Thus, Stolz has failed to articulate any potentially viable claim under the Seventh Amendment.

## B.     Fourteenth Amendment Equal Protection

Stolz next argues that the Ohio statute violates his Due Process rights under the Fourteenth Amendment. While the basis for his due process challenge is not entirely clear from his briefing, it appears that his concern is that the statute is so ambiguous as to whether or not it provides immunity to non-employer subcontractors (such as the Enrolled Subcontractor Parties here) that citizens are not on "notice of conduct that is forbidden or required." (*See* Opp. to Mot. to Dismiss, Doc. 113 at #1113). And Stolz further claims that he is entitled to strict scrutiny review on this challenge, as the ambiguity in the statute deprives him of a "fundamental right," namely "his right to trial by jury." (*Id.*).

There are at least two problems with that. To start, as noted above, Stolz does not have a Seventh Amendment right to a jury here, and thus has not been deprived of that "fundamental right." Second, while it is perhaps possible that a statute could be so ambiguous as to create a fair-notice due-process concern, the statute here does not qualify—not even close. As the Supreme Court itself has observed, the meaning of statutes often leaves "room for dispute," *see Rivers v. Roadway Exp., Inc.*, 511 U.S.

298, 312 (1994). Nonetheless, "[i]t is this Court's responsibility to say what a statute means, and once the Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law." *Id.* Here, the court with ultimate responsibility for determining the meaning of Section 4123.35(O) is the Ohio Supreme Court, and that court has spoken, meaning it is the duty of other courts to "respect that understanding." Nor, in this Court's view, was there anything so counter-textual or surprising in the Ohio Supreme Court's analysis of the statutory language that would rise anywhere near the level needed to support an ambiguity-based due-process challenge.

That is particularly true in that, given the absence of any fundamental right, Stolz's due process challenge—however formulated—receives only rational-basis review. While the briefing does little to discuss the specifics of such review, the Court explored the issue extensively with counsel at argument. Based on the arguments offered there, the Court remains convinced that Stolz has not pled, and cannot plead, a plausible rational basis argument to invalidate the statute.

In the rational basis context, the statute starts with a strong presumption of constitutionality. *See, e.g.*, *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 536 (6th Cir. 2007) (quoting *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993)). The Court need only identify some legitimate public purpose to which the statute is rationally related, and it is irrelevant whether the legislature itself actually had that policy in mind. *See FCC v. Beach Comm'n, Inc.*, 508 U.S. 307, 315 (1993) ("Moreover, because we never require a legislature to articulate its reasons for enacting a statute,

it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature."); *Am. Exp. Travel Related Servs. Co. v. Kentucky*, 641 F.3d 685, 690 (6th Cir. 2011) ("Under rational basis review, it is constitutionally irrelevant what reasoning in fact underlay the legislative decision. … Thus, if a statute can be upheld under any plausible justification offered by the state, or even hypothesized by the court, it survives rational-basis scrutiny.") (citations and quotations omitted). Moreover, both the United States Supreme Court and the Sixth Circuit repeatedly have admonished that, once a legitimate public purpose is identified, any rational-basis attack on the means-ends fit between the statute and that purpose faces a high hurdle. *See, e.g., Bredesen,* 500 F.3d at 537 (quoting *Heller*, 509 U.S. at 321) ("[U]nder rational basis review, the court is obliged 'to accept a legislature's generalizations even when there is an imperfect fit between means and ends.'"); *Jackson v. Jamrog*, 411 F.3d 615, 620 (6th Cir. 2005) (same). That is, if the statute appears to promote the identified public purpose, claims that the statute is over- or under-inclusive in pursuing that purpose are non-starters. The Sixth Circuit has likewise instructed that in undertaking the analysis, the focus is on the application of the statute to those covered overall; the mere fact that application of a statute "in practice … results in some inequality" in particular cases is insufficient to support a rational basis challenge. *Id.* (citing *Heller*, 509 U.S. at 321).

Here, as the Ohio Supreme Court observed, there are many rational bases supporting the construct that Section 4123.35(O) adopts, under which all enrolled subcontractors and the general contractor on a large project (the statute is limited to

construction projects where the costs of construction are likely to exceed $100 million, or as to certain public projects, $25 million), *see id.*, are essentially treated as a single employer. As the Ohio Supreme Court noted, that allows a general contractor to band together with subcontractors to bid for large projects on a level playing field with integrated contractors (*i.e.*, contractors who directly employ workers in the various trades) from a workers' compensation cost perspective. *See Stolz II*, 155 Ohio St. 3d at 572–73. As a result, the number of potential bidders on such projects likely will increase, presumably resulting in more favorable bids, and thus lower construction costs in the State, thereby presumably promoting economic development. Moreover, many of the construction projects that the statute addresses likely will be public projects (especially given the lower dollar threshold for such projects), meaning that a reduction in construction costs will save taxpayers dollars. One can scarcely dispute (and to Stolz's credit, he did not dispute) that either or both of these are legitimate public purposes. And, with that out of the way, there is nothing much left to a potential rational basis challenge. Perhaps such goals could have been pursued equally well, or even better, by other mechanisms, and the statute may well be over- or under-inclusive in the projects that it covers (there is nothing magical about the specified thresholds), but that is insufficient to create a plausible constitutional claim.

Nor can Stolz address that shortcoming, as he sought to do at argument, by asserting that the resulting statutory structure resulted in an allegedly inequitable result for him on the facts here. The question under rational basis is not whether a statute provides the most equitable result in all individual cases, but rather whether

it appears to pursue a legitimate public purpose in a non-arbitrary fashion. *Jackson*, 411 F.3d at 620. This one does.

Similarly, Stolz does not advance his cause by noting that this case is at the motion to dismiss stage, not the summary judgment stage. The issue here is a purely legal issue. Additional facts will not, indeed cannot, change any aspect of the constitutional analysis. For example, the purposes set forth above may not have even been among those that the Ohio General Assembly actually considered in enacting the law, and discovery may potentially reveal that fact, but that would not matter. As already noted, the public purpose that satisfies the rational basis standard need not in fact have been the real purpose. Nor would additional information on the alleged means-end fit between this statute and the hypothesized goal change the analysis. It is at least plausible, in fact more than plausible here, that the statute promotes the above-identified purposes, and that fact, as a matter of law, prevents Stolz from pleading a viable rational-basis due-process challenge.

## C.    Fourteenth Amendment Equal Protection.

Finally, Stolz argues that he has a potentially viable claim that the statute violates his Equal Protection rights under the Fourteenth Amendment. This argument, too, fails as a matter of law.

To start, to receive any form of heightened scrutiny for an Equal-Protection-based challenge to a state statute, a party must show that the statute discriminates either on the basis of a suspect classification or based on the exercise of a fundamental

right. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 16 (1973) (listing cases in footnotes 39 and 40). Stolz can show neither.

There is no suspect classification. The statute differentiates between those who work for enrolled subcontractors (who are barred from suing any other enrolled subcontractor) and those who do not. There is no plausible argument that this is a "suspect classification," and thus a statue creating the classification is not subject to heightened review. Then, for the same reasons that the statute survives rational basis review on the due process claim, it also survives such review under the Equal Protection Clause.

Nor does Stolz fare any better with his argument that the statute should receive strict scrutiny review as it "encroaches on a fundamental right." (Pl.'s Opp. to Mot. to Dismiss, Doc. 113, at #1113) (quoting *Obergefell v. Wymyslo*, 962 F. Supp. 2d 968, 978 (S.D. Ohio 2013)). The "fundamental right" that he raises is once again the "right to a trial by jury." But for all the reasons discussed above, there is no such right at issue here. Accordingly, the alleged "right to trial by jury" is no more effective as support for a putative Equal Protection claim than it was as an independent Seventh Amendment challenge. Thus, once again the statute receives rational basis review, which it survives as a matter of law.

Tellingly, Stolz's own opposition to the motion to dismiss acknowledges that the Ohio legislature is free to substitute a workers' compensation scheme for whatever pre-existing common law right an employee otherwise may have had against his

employer.[1] (Pl.'s Opp. to Mot. to Dismiss at #1115). Essentially, the State of Ohio has chosen to substitute a non-fault-based compensation scheme in this setting for a fault-based one, and to limit the parties who an injured person can sue. As the Ohio Supreme Court observed, the framework reflects a compromise in which injured parties "give up their common-law remedy and accept possibly lower monetary recovery, but with greater assurance that they will receive reasonable compensation for their injury." *Stolz II*, 155 Ohio St. 3d at 572.

But, having conceded that Ohio is free to make that substitution in general, Stolz has no meaningful constitutional argument left. If the Ohio General Assembly is free to provide non-fault-based recovery for employees in exchange for extinguishing claims against employers, why would it not be free to likewise extinguish claims against other enrolled subcontractors, so long as the employee receives that same form of recovery? Some states, for example, have adopted non-fault-based regimes for auto insurance, in which a car accident victim has a contractual cause of action solely against his or her *own* insurer for damages caused by an accident, even if the accident was another driver's fault. The substitution of a non-fault-based liability scheme, and an accompanying limitation on whom one may sue, cannot be said, as a general matter, to violate the U.S. Constitution, and Stolz has identified nothing unique about the context here (workplace injury caused by a non-employer) that precludes the Ohio

---

[1] For a discussion of the history of workplace liability rules, *see generally*, Richard A. Epstein, *The Historical Origins and Economic Structure of Workers' Compensation Law*, 16 GA. L. REV. 775 (1982) (hereinafter "Historical Origins").

General Assembly from adopting a non-fault-based regime as to the Enrolled Subcontractor Parties.

Indeed, in *Mountain Timber* and *White*, the United States Supreme Court addressed very similar constitutional issues. Employers argued that abolishing fault-based (and often quite limited, *see generally Historical Origins, supra* n.2) common law actions, and instead imposing broad non-fault-based liability against the employer, was an unconstitutional taking; employees separately complained that the new non-fault-based recovery mechanisms were insufficiently compensatory and thus unconstitutional. In response, the Court observed the following:

> The close relation of the rules governing responsibility as between employer and employee to the fundamental rights of liberty and property is, of course, recognized. But those rules, as guides of conduct, are not beyond alteration by legislation in the public interest. *No person has a vested interest in any rule of law, entitling him to insist that it shall remain unchanged for his benefit.*

*White*, 243 U.S. at 197–98 (emphasis added). That observation remains equally apropos today. And the fact that the Ohio General Assembly has expanded that "alteration" of common law rules to extend past employers to include enrolled subcontractors on large construction projects does not change that underlying point.

In sum, Stolz has failed to identify any plausible legal theory supporting his constitutional challenge to Section 4123.35(O). And under that statute, as interpreted by the Ohio Supreme Court, Stolz has no cause of action against the Enrolled Subcontractor Parties. Accordingly, the Court dismisses Stolz's action against those parties with prejudice.

## IV. CONCLUSION

For the reasons stated more fully above, the Court **GRANTS** the Enrolled Sub-contractor Parties' Motion to Dismiss (Doc. 111) and hereby **DISMISSES WITH PREJUDICE** Stolz's claims against the Enrolled Subcontractor Parties.

**SO ORDERED.**

February 13, 2020
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**